IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CHARLES BROOKS CO.;
MR. "B" LOGGING COMPANY, INC.; and
CHARLES BROOKS, Individually                                    PLAINTIFFS

V.                              CASE NO. 06-CV-1061

GEORGIA-PACIFIC CORPORATION                                    DEFENDANT


## MEMORANDUM OPINION

Before the Court is Defendant Georgia-Pacific Corporation's ("GP") Motion for

Summary Judgment.  (Doc. No. 9)  Plaintiffs have responded.  (Doc. No. 12)  Defendant has

replied to Plaintiffs' response.  (Doc. No. 15)  The Court finds the matter ripe for consideration.

### I. BACKGROUND

Plaintiff Charles Brooks was an independent contractor who supplied wood to GP's

Crossett, Arkansas, mills since the late 1940s.  Brooks was the sole shareholder of the two

corporate Plaintiffs, Charles Brooks Co. and Mr. "B" Logging Company, Inc.[1]  Brooks had

contracted with GP for approximately fifty-six years, providing timber harvesting services,

logging services, paper wood services, and hauling services.  The parties have disputed some of

the facts of this case.  Accordingly, where there are factual disputes, we base the following

summary on accounts provided by Brooks, the nonmoving party.[2]

According to Brooks, beginning in approximately 1995 or 1996, GP introduced and

---

[1]The Plaintiffs will be collectively referred to as "Brooks."

[2] When reviewing a grant or denial of summary judgment, this Court considers the
evidence in the light most favorable to the nonmoving party and draws all reasonable inferences
in that party's favor.  *See Barker v. Ceridian Corp.*, 122 F.3d 628, 632 (8th Cir. 1997).

initiated a new logging system and process whereby GP made mandatory requirements of its wood contractors to purchase new advanced automated equipment and related timber equipment. Brooks claims that a GP representative specifically advised him that in order to continue doing business with GP, all wood producers would be required to purchase expensive machinery for harvesting, processing, and hauling and would have to go through a certification process.  In exchange, GP would provide long-term wood production operations for the timber producers and loggers that complied.[3]  Brooks stated that GP promised him at least seventy-five loads per week for each delimber machine he purchased.  According to Brooks, a GP representative advised the loggers that failure to acquire the equipment would result in the termination of their employment and any contractual relationship.

A written contract existed between Brooks and GP during this time period.  The earliest contract furnished to the Court is dated December 30, 1996.  This agreement stated that GP was not obligated to supply Brooks "with any minimum amount of services to be provided and that there is absolutely no guarantee as to the amount of work to be performed."  The contract stated that it would remain in effect for one year and would continue for successive one-year terms unless terminated earlier.

Brooks acquired the necessary equipment required by GP and continued to perform the timber production contract services for GP.  However, according to Brooks, beginning in 1997, GP allowed non-complying timber producers and loggers to perform contractual services for GP.

---

[3]Brooks has alleged that GP made these assurances to Brooks and other similar contractors beginning at the time of the initial requirement of the investment in the equipment "and for several years thereafter."  Brooks claims that as late as February 2001, GP advised Brooks and bankers associated with Brooks that GP would have more than sufficient work for Brooks.

Then, GP began to reduce its logging quotas pertaining to Brooks to the extent that Brooks was unable to pay normal operating expenses and service the debt requirements of his newly acquired machinery and equipment.

Brooks closed his timber production business in 2002. According to Brooks, GP forced him out of business. Brooks returned some of his equipment to the seller. The rest of the equipment was sold by Brooks's primary creditor, First State Bank of Crossett. The sale did not bring enough money to satisfy the debt against the equipment. Brooks then filed this suit against GP, alleging breach of contract, bad faith breach of contract, promissory estoppel and detrimental reliance, intentional infliction of emotional distress and intentional harm, fraudulent inducement, unjust enrichment, and fraudulent misrepresentation.

## II. STANDARD OF REVIEW

The standard of review for summary judgment is well established. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed. 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed. 202 (1986). In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op.*, 446 F.3d 841 (8th Cir. 2006). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise*

-3-

*Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  Genuine issues of material fact exist where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.  Where no reasonable jury could render a verdict for the plaintiff, however, summary judgment is properly granted to a defendant.  *Taylor v. White*, 321 F.3d 710, 715 (8th Cir. 2003).

### III. DISCUSSION

A.  Breach of Contract

First, GP argues that it is entitled to summary judgment on Brooks's breach of contract claim because Brooks, in his deposition, could not point specifically to any instance of a breach of contract.  The Court disagrees.  In his deposition, Brooks testified that Earnest Lovett, a GP representative, told Brooks that he would be required to purchase certain machinery and equipment in order to continue any type of business association with GP.  Further, according to Brooks, Lovett told Brooks that GP would provide long-term wood production operations for timber producers and loggers that complied with GP's demand and that GP would not work with any non-compliant contractors.  Brooks testified that GP then hired non-compliant contractors to perform contractual services for GP.  Brooks further testified that GP promised him seventy-five loads of logs per week for each delimber machine that he purchased and that GP did not follow through with this promise.

In its brief, GP seems to only address the written contracts between Brooks and GP and its only argument for summary judgment is that Brooks could not specifically identify how these written contracts had been breached.  However, Brooks has alleged that GP breached both oral and written agreements, and in his deposition, Brooks identified specific oral agreements that he

alleges were breached by GP.  GP has not yet offered any evidence to rebut Brooks's claims regarding the breach of these agreements.  Thus, a fact question or a dispute remains as to whether GP has breached the agreements and/or contracts.  GP is not entitled to summary judgment on the breach of contract claim.

### B.  Bad Faith Breach of Contract

Second, GP argues that it is entitled to summary judgment on the bad faith breach of contract claim because no such cause of action exists under Arkansas law.  In *Country Corner Food & Drug, Inc. v. First State Bank & Trust of Conway*, 332 Ark. 645, 655, 966 S.W.2d 894 (1998), the Arkansas Supreme Court stated that it had "recognized the affirmative tort of bad faith only against insurance companies."  *See Moss v. American Alternative Ins. Corp.*, 420 F. Supp.2d  962, 965 n.1 (1998) (*citing Country Corner*, 332 Ark. 645, 966 S.W.2d 894 (1998)) (stating that the tort of bad faith applies only to insurance companies)).  The supreme court further stated that "[t]he fact that every contract imposed an obligation to act in good faith does not create a cause of action for a violation of that obligation and ... this Court has never recognized a cause of action for failure to act in good faith."  *Country Corner Food*, 332 Ark. at 655, 966 S.W.2d 894.  Brooks urges this Court to recognize the tort of bad faith against a corporation for the first time in Arkansas.  The Court refuses to recognize this new tort in Arkansas.  Furthermore, the Court is not convinced that there are even facts in this case to support such a claim  Thus, GP has demonstrated that is entitled to judgment as a matter of law on the bad faith breach of contract claim.

C.  Promissory Estoppel and Detrimental Reliance

Third, GP asserts that it is entitled to summary judgment on Brooks's promissory estoppel and detrimental reliance claims because Brooks cannot demonstrate that GP reasonably expected Brooks to act in reliance on the promise, that he acted in reasonable reliance upon the promise to his detriment, and that there was no injustice created.  GP argues that the written contract never obligated GP to furnish a specific amount of work.  However, GP does not address the alleged oral promises that GP made to Brooks, such as promising Brooks seventy-five loads of logs per week for each of the delimber machines Brooks purchased and promising Brooks that GP would not deal with non-compliant contractors.

Under Arkansas law, the elements of promissory estoppel are as follows:  (1) the defendant made a promise to the plaintiff; (2) the defendant should reasonably have expected for the plaintiff to act in reliance on the promise or refrain from acting in reliance on the promise; (3) the plaintiff acted or refrained from acting in reasonable reliance upon the promise at his or her detriment; and (4) injustice can only be avoided by enforcement of the promise.  *See Van Dyke v. Glover*, 326 Ark. 736, 745, 934 S.W.2d 204 (1996) ; AMI Civil 2005, 2444.

Here, Brooks has sufficiently stated that he relied on promises made by GP to his detriment, incurring great expenses in purchasing machinery and equipment. Whether GP reasonably expected Brooks to act on its promises, whether Brooks actually relied on the promises, and whether the reliance was reasonable are all questions for the trier of fact.  *See Van Dyke*, 326 Ark. at 745, 934 S.W.2d 204.  Thus, GP is not entitled to summary judgment on the promissory estoppel and detrimental reliance claims.

D.  Intentional Infliction of Emotional Distress and Intentional Harm

Fourth, GP argues that it is entitled to summary judgment on the claims of intentional infliction of emotional distress and intentional harm because Brooks offered no proof of outrage and did not identify any GP employee who acted against Brooks in an outrageous manner. Intentional infliction of emotional distress is the tort of outrage in Arkansas. *See Ross v. Patterson*, 307 Ark. 68, 70, 817 S.W.2d 418 (1991).

A plaintiff must demonstrate the following elements to establish a claim for outrage:  (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community;" (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.  *Calvary Christian Sch., Inc. v. Huffstuttler*, 367 Ark. 117, ___ S.W.3d ___ (2006) (citing *Crockett v. Essex*, 341 Ark. 558, 19 S.W.3d 585 (2000)).  The Arkansas Supreme Court gives a narrow view to the tort of outrage, requiring clear-cut proof to establish the elements in outrage cases.  *Id*.  "The type of conduct that meets the standard for outrage must be determined on a case-by-case basis."  *Id*.

In *Sterling Drug, Inc. v. Oxford*, a corporate employer suspected that an employee had reported it to the General Services Administration for pricing violations and the employer entered on an eighteen-month campaign to force the employee to resign even though agents of the employer knew that the employee was under pressure because of a recent divorce.  294 Ark. 239, 743 S.W.2d 380 (1988).  The Arkansas Supreme Court found that the employer's conduct

-7-

did not rise to a sufficient level to support a verdict for outrage, noting that the tort of outrage did not open the doors of the courts to every slight insult or indignity one must endure in life. *Sterling Drug*, 294 Ark. at 383.

In viewing the facts of this case in the light most favorable to Brooks, the Court cannot find that GP's conduct satisfies the requirements of the tort of outrage. Brooks alleges that GP knew of Brooks's financial situation and intended to drive Brooks out of business. Even assuming these allegations are true, just as in *Sterling Drug*, GP's conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" and could not "be regarded as atrocious" and "utterly intolerable in civilized society." *Id*. at 244, 743 S.W.2d 380. GP's alleged conduct does not meet the high standard required for outrage cases. Thus, GP is entitled to judgment as a matter of law on the outrage claim.

E.  Fraudulent Inducement and Fraudulent Misrepresentation

Fifth, GP argues that it is entitled to summary judgment on the fraudulent inducement and fraudulent misrepresentation claims because GP's alleged misrepresentations related to a future event and not a fact. The elements for a claim of damages based upon fraud are as follows: (1) defendant made a false representation of a material fact; (2) defendant knew or believed the representation was false or believed that he or she did not have a sufficient basis of information to make the representation; (3) defendant intended to induce the plaintiff to act in reliance upon the misrepresentation; and (4) that plaintiff justifiably relied upon the misrepresentation in acting and as a result sustained damages. *See* AMI Civil 2005, 402.

Here, GP's argument centers around the first element, which is that there must be a false representation of a material *fact*. An assertion limited to a future event may be a promise that

-8-

imposes liability for breach of contract, but it is not a representation as to that event. *P.A.M. Transport, Inc. v. Ark. Blue Cross and Blue Shield*, 315 Ark. 234, 240, 868 S.W.2d 33 (1993) (citing *Delta Sch. of Commerce, Inc. v. Wood*, 298 Ark. 195, 766 S.W.2d 424 (1989)). In the context of negotiating a contract, the misrepresentation must relate to a past event, or present circumstance, but not to a future event. *Id*. However, this general rule is inapplicable if the person making the representation or prediction knows it to be false at the time it was made. *Delta Sch. of Commerce*, 298 Ark. at 199, 766 S.W.2d 424.

Here, Brooks claims that GP told him that he must purchase additional equipment to continue doing business with GP and that there would be sufficient business from GP to justify the expenditure of money for the new equipment. GP characterizes these promises as relating to future events, and this is GP's sole argument as to why it is entitled to summary judgment on the fraudulent inducement and fraudulent misrepresentation claims. However, the statements could possibly be characterized as statements of an existing or present situation–especially the statement concerning the requirement that Brooks purchase additional equipment and machinery in order to continue doing business with GP. Even if there was no question that the statements related to future events, GP would still be liable if GP believed the promises to be false when it made them to Brooks. This is a question of fact for the jury to decide. Thus, GP is not entitled to summary judgment on the fraudulent inducement and fraudulent misrepresentation claims.

F. Unjust Enrichment and Equitable Restitution

For its final argument, GP asserts that Brooks is not entitled to restitution because, under Arkansas law, the doctrine of restitution or unjust enrichment is not available where there is a valid, legal, and binding contract. *See Hall Contracting Corp. v. Entergy Serv., Inc.*, 309 F.3d

468, 475 (8th Cir. 2002) (construing Arkansas contract law).  However, the "mere fact that there is a contract between the parties does not prevent the grant of restitution in an appropriate case." *Friends of Children, Inc. v. Marcus*, 46 Ark. App. 57, 61, 876 S.W.2d 603 (1994).  Appropriate cases include those in which there has been a rescission at law, there has been a contract discharged by impossibility or frustration of purpose, or there has been a fundamental mistake about something important in the contract.  *Id*., 876 S.W.2d 603.  Another appropriate instance for a restitution claim when there is valid, legal, and binding contract is when the express contract does not fully address a subject.  *Klein v. Arkoma Production Co*., 73 F.3d 779, 786 (8th Cir. 1996) (construing Arkansas contract law).  The comprehensive question in unjust enrichment cases is "whether the circumstances are such that equitably defendant should restore to plaintiff what he has received."  *Id.* at 605–06, 876 S.W.2d 603.  The unjust enrichment remedy is neither given nor withheld automatically but is awarded as a matter of judgment.  *Id.* at 606, 876 S.W.2d 603.

Here, there was a valid, legal, and binding written contract between GP and Brooks.  One main factual dispute in this case is whether there were also valid oral agreements between the parties and/or promises made after the written contract.  Brooks argues that GP was unjustly enriched with an ample supply of wood and timber products without having to bear the costs associated with the mandatory equipment purchases.  GP, however, did pay Brooks for the wood and timber products that he supplied to GP.  It is hard to see how the enrichment of wood and timber products was unjust when Brooks was paid for these products.  Moreover, Brooks has never alleged that GP promised to pay directly for the mandatory equipment purchases.  Brooks has only claimed that GP promised to supply him with more than sufficient work after he made

-10-

the mandatory equipment purchases and that GP would only do business with contractors who purchased the mandatory equipment.  GP received the enrichment or benefit of the wood and timber products supplied by Brooks, but Brooks was compensated for these products.  Thus, the Court cannot say this is a case in which GP received something of value to which it was not entitled and which it must restore.

This case centers around disputes regarding certain agreements and promises; thus, it is possible that GP could be liable for the claims regarding breach of contract, fraudulent inducement, fraudulent misrepresentation, or detrimental reliance.  The Court is hesitant to apply theories of implied contract to the facts of this case.  The Court finds that the present case is not one in which claims based upon unjust enrichment and equitable restitution are appropriate.  Therefore, Brooks's unjust enrichment and equitable relief claims must be dismissed.

## IV. CONCLUSION

For reasons discussed herein and above, the Court finds that Defendant Georgia Pacific Corporation's Motion for Summary Judgment should be and hereby is **GRANTED IN PART** and **DENIED IN PART**.  The following claims against Defendant shall be **DISMISSED WITH PREJUDICE**:  bad faith breach of contract; intentional infliction of emotional distress and intentional harm, unjust enrichment and equitable restitution.  An order of even date, consistent with this opinion, shall issue.

**IT IS SO ORDERED**, this 19th day of April, 2007.

/s/Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge